# EXHIBIT 7-6

## EXHIBIT B

## FRANCHISE AGREEMENT (TRADITIONAL)

[CITY, STATE]
[Address]
L/C: _____
File #: _____

## FRANCHISE AGREEMENT

      **THIS FRANCHISE AGREEMENT** ("Franchise") made this \_\_\_\_\_ day of _____, for the operation of a McDonald's restaurant located at _____ (the "Restaurant") by and between:

### McDONALD'S USA, LLC,

a Delaware limited liability company,

("McDonald's")

and

_____

_____

(collectively "Franchisee")

for the purpose of granting the Franchisee the rights necessary to operate the Restaurant.

      In consideration of the mutual rights and obligations contained herein McDonald's and Franchisee agree as follows:

      1.    *Nature and Scope of Franchise.*

      (a)    McDonald's operates a restaurant system ("McDonald's System"). The McDonald's System is a comprehensive system for the ongoing development, operation, and maintenance of McDonald's restaurant locations which have been selected and developed for the retailing of a limited menu of uniform and quality food products, emphasizing prompt and courteous service in a clean, wholesome atmosphere which is intended to be attractive to children and families and includes proprietary rights in certain valuable trade names, service marks, and trademarks, including the trade names "McDonald's" and "McDonald's Hamburgers," designs and color schemes for restaurant buildings, signs, equipment layouts, formulas and specifications for certain food products, methods of inventory and operation control, bookkeeping and accounting, and manuals covering business practices and policies. The McDonald's System is operated and is advertised widely within the United States of America and in certain foreign countries.

1

(b)   McDonald's holds the right to authorize the adoption and use of the McDonald's System at the Restaurant. The rights granted to the Franchisee to operate the Restaurant are set forth in this Franchise, including the Operator's Lease ("Lease") which is attached hereto as Exhibit A, incorporated in this Franchise.

(c)   The foundation of the McDonald's System and the essence of this Franchise is the adherence by Franchisee to standards and policies of McDonald's providing for the uniform operation of all McDonald's restaurants within the McDonald's System including, but not limited to, serving only designated food and beverage products; the use of only prescribed equipment and building layout and designs; strict adherence to designated food and beverage specifications and to McDonald's prescribed standards of Quality, Service, and Cleanliness in the Restaurant operation. Compliance by Franchisee with the foregoing standards and policies in conjunction with the McDonald's trademarks and service marks provides the basis for the valuable goodwill and wide family acceptance of the McDonald's System. Moreover, the establishment and maintenance of a close personal working relationship with McDonald's in the conduct of Franchisee's McDonald's restaurant business, Franchisee's accountability for performance of the obligations contained in this Franchise, and Franchisee's adherence to the tenets of the McDonald's System constitute the essence of this Franchise.

(d)   The provisions of this Franchise shall be interpreted to give effect to the intent of the parties stated in this paragraph 1 so that the Restaurant shall be operated in conformity to the McDonald's System through strict adherence to McDonald's standards and policies as they exist now and as they may be from time to time modified.

(e)   Franchisee acknowledges Franchisee's understanding of McDonald's basic business policy that McDonald's will grant franchises only to those individuals who live in the locality of their McDonald's restaurant, actually own the entire equity interest in the business of the Restaurant and its profits, and who will work full time at their McDonald's restaurant business. Franchisee represents, warrants, and agrees that Franchisee actually owns the complete equity interest in this Franchise and the profits from the operation of the Restaurant, and that Franchisee shall maintain such interest during the term of this Franchise except only as otherwise permitted pursuant to the terms and conditions of this Franchise. Franchisee agrees to furnish McDonald's with such evidence as McDonald's may request, from time to time, for the purpose of assuring McDonald's that Franchisee's interest remains as represented herein.

(f)   Franchisee agrees to pay to McDonald's all required payments under this Franchise, including, without limitation, the payments set forth in paragraphs 8 and 9 herein and paragraph 3.01 of the Lease. All payments hereby required constitute a single financial arrangement between Franchisee and McDonald's which, taken as a whole and without regard to any designation or descriptions, reflect the value of the authorization being made available to the Franchisee by McDonald's in this Franchise and the services rendered by McDonald's during the term hereof.

2.   ***Franchise Grant and Term.***

(a)   McDonald's grants to Franchisee for the following stated term the right, license, and privilege:

2

    (i)  to adopt and use the McDonald's System at the Restaurant;

    (ii)  to advertise to the public that Franchisee is a franchisee of McDonald's;

    (iii)  to adopt and use, but only in connection with the sale of those food and beverage products which have been designated by McDonald's at the Restaurant, the trade names, trademarks, and service marks which McDonald's shall designate, from time to time, to be part of the McDonald's System; and

    (iv)  to occupy the Restaurant as provided herein.

The rights granted under this Franchise are limited to the Restaurant's location only.

  (b)  The term of this Franchise shall begin on _____ and end on _____, unless terminated prior thereto pursuant to the provisions hereof.

  3.  ***General Services of McDonald's.*** McDonald's shall advise and consult with Franchisee periodically in connection with the operation of the Restaurant and also, upon Franchisee's request, at other reasonable times. McDonald's shall communicate to Franchisee know-how, new developments, techniques, and improvements in areas of restaurant management, food preparation, and service which are pertinent to the operation of a restaurant using the McDonald's System. The communications shall be accomplished by visits by operations consultants, printed and filmed reports, seminars, and newsletter mailings. McDonald's shall also make available to Franchisee all additional services, facilities, rights, and privileges relating to the operation of the Restaurant which McDonald's makes generally available, from time to time, to all its franchisees operating McDonald's restaurants.

  4.  ***Manuals.*** McDonald's shall provide Franchisee with the business manuals prepared for use by franchisees of McDonald's restaurants similar to the Restaurant. The business manuals contain detailed information including: (a) required operations procedures; (b) methods of inventory control; (c) bookkeeping and accounting procedures; (d) business practices and policies; and (e) other management and advertising policies. Franchisee agrees to promptly adopt and use exclusively the formulas, methods, and policies contained in the business manuals, now and as they may be modified from time to time. Franchisee acknowledges that McDonald's or its affiliates own all proprietary rights in and to the McDonald's System and that the information revealed in the business manuals, in their entirety, constitute confidential trade secrets. Without the prior written consent of McDonald's, Franchisee shall not disclose the contents of the business manuals to any person, except employees of Franchisee for purposes related solely to the operation of the Restaurant, nor shall Franchisee reprint or reproduce the manuals in whole or in part for any purpose except in connection with instruction of employees in the operation of the Restaurant. Such manuals, as modified from time to time, and the policies contained therein, are incorporated in this Franchise by reference.

  5.  ***Advertising.*** McDonald's employs both public relations and advertising specialists who formulate and carry out national and local advertising programs for the McDonald's System.

  Franchisee shall use only advertising and promotional materials and programs provided by McDonald's or approved in advance, in writing, by McDonald's. Neither the approval by McDonald's of

Franchisee's advertising and promotional material nor the providing of such material by McDonald's to Franchisee shall, directly or indirectly, require McDonald's to pay for such advertising or promotion.

Franchisee shall expend during each calendar year for advertising and promotion of the Restaurant to the general public an amount which is not less than four percent (4%) of Gross Sales (as that term is defined in paragraph 7) for such year. Expenditures by Franchisee to national and regional cooperative advertising and promotion of the McDonald's System, or to a group of McDonald's restaurants which includes the Restaurant, shall be a credit against the required minimum expenditures for advertising and promotion to the general public.

6. *Training*. McDonald's shall make available to Franchisee the services of Hamburger University, the international training center for the McDonald's System. Franchisee acknowledges the importance of quality of business operation among all restaurants in the McDonald's System and agrees to enroll Franchisee and Franchisee's managers, present and future, at Hamburger University or at such other training center as may be designated by McDonald's from time to time. McDonald's shall bear the cost of maintaining Hamburger University and any other training centers, including the overhead costs of training, staff salaries, materials, and all technical training tools, and agrees to provide to Franchisee both basic and advanced instruction for the operation of a McDonald's System restaurant. Franchisee shall pay all traveling, living, compensation, or other expenses incurred by Franchisee and Franchisee's employees in connection with attendance at Hamburger University or such other training centers.

7. *Gross Sales*. For the purposes of this Franchise, the term "Gross Sales" shall mean all revenues from sales of the Franchisee based upon all business conducted upon or from the Restaurant, whether such sales be evidenced by check, cash, credit, charge account, exchange, or otherwise, and shall include, but not be limited to, the amounts received from the sale of goods, wares, and merchandise, including sales of food, beverages, and tangible property of every kind and nature, promotional or otherwise, and for services performed from or at the Restaurant, together with the amount of all orders taken or received at the Restaurant, whether such orders be filled from the Restaurant or elsewhere. Gross Sales shall not include sales of merchandise for which cash has been refunded, provided that such sales shall have previously been included in Gross Sales. There shall be deducted from Gross Sales the price of merchandise returned by customers for exchange, provided that such returned merchandise shall have been previously included in Gross Sales, and provided that the sales price of merchandise delivered to the customer in exchange shall be included in Gross Sales. Gross Sales shall not include the amount of any sales tax imposed by any federal, state, municipal, or other governmental authority directly on sales and collected from customers, provided that the amount thereof is added to the selling price or absorbed therein and actually paid by the Franchisee to such governmental authority. Each charge or sale upon credit shall be treated as a sale for the full price in the month during which such charge or sale shall be made, irrespective of the time when the Franchisee shall receive payment (whether full or partial) therefor.

8.  (a)  *Service Fee.* Franchisee shall pay a monthly service fee on or before the tenth (10th) day of the following month in an amount equal to four percent (4.0%) of the Gross Sales of the Restaurant for the preceding month immediately ended.

(b)  *Method of Payment.* Franchisee shall at all times participate in the McDonald's automatic debit/credit transfer program as specified by McDonald's from time to time for the payment of all amounts due McDonald's pursuant to this Franchise. Franchisee shall execute and deliver to McDonald's such documents and instruments as may be necessary to establish and maintain said automatic debit/credit transfer program.

(c)  *Interest on Delinquencies.* In the event that the Franchisee is past due on the payment of any amount due McDonald's under this Franchise, including accrued interest, the Franchisee shall be required, to the extent permitted by law, to pay interest on the past due amount to McDonald's for the period beginning with the original due date for payment to the date of actual payment at an annual rate equal to the highest rate allowed by law or, if there is no maximum rate permitted by law, then fifteen percent (15%). Such interest will be calculated on the basis of monthly compounding and the actual number of days elapsed divided by 365.

9.  *Initial Fee.* Franchisee acknowledges that: (a) the initial grant of this Franchise constitutes the sole consideration for the payment of an Initial Fee of Forty-Five Thousand Dollars ($45,000.00) paid by Franchisee to McDonald's; and (b) the fee has been earned by McDonald's (except where the construction of the Restaurant has not been completed within one (1) year from the date of the execution and delivery of this Franchise). If the Restaurant has not been constructed or is not ready for occupancy at the time of the execution of this Franchise, McDonald's shall use its best efforts to expedite the construction and lease of the Restaurant to Franchisee. However, McDonald's shall not be liable to Franchisee in any manner for any delays in or lack of completion of such construction for any reason. McDonald's shall be under no obligation to enforce performance or to seek other remedies for non-performance of any lease, clause, or contract necessary for the construction of the Restaurant and reserves the right, in case construction of the Restaurant should be abandoned, the lease assigned, or other interest in the premises be relinquished, to terminate this Franchise upon reimbursement to Franchisee of the Initial Fee. At such time as the Restaurant is completed and ready for occupancy, the Initial Fee shall be deemed to be earned. If the Restaurant is not ready for occupancy within one (1) year from the date of this Franchise, Franchisee shall have the right to terminate this Franchise and obtain an immediate refund of the Initial Fee upon written request to McDonald's.

10.  *Reports.* On or before 11:00 a.m. Central Standard Time on the first business day of each month, Franchisee shall render, in a manner specified by McDonald's, a statement, in such form as McDonald's shall reasonably require from time to time, of all receipts from the operation of the Restaurant for the preceding month immediately ended. On or before the twenty-fifth (25th) day of each month Franchisee shall submit to McDonald's an operating statement and a statistical report for the previous month in form satisfactory to McDonald's. Franchisee shall keep and preserve full and complete records of Gross Sales for at least three (3) years in a manner and form satisfactory to McDonald's and shall also deliver such additional financial and

operating reports and other information as McDonald's may reasonably request on the forms and in the manner prescribed by McDonald's. Franchisee further agrees to submit within ninety (90) days following the close of each fiscal year of the Restaurant's operation, a profit and loss statement covering operations during such fiscal year and a balance sheet taken as of the close of such fiscal year, all prepared in accordance with generally accepted accounting principles. The profit and loss statement and the balance sheet shall, if McDonald's shall request certification, be certified by a certified public accountant. Franchisee shall at Franchisee's expense cause Franchisee's public accountant and certified public accountant, if any, to consult with McDonald's concerning such statement and balance sheet. The original of each such report required by this paragraph 10 shall be mailed to McDonald's at the address indicated in paragraph 22 herein.

McDonald's shall have the right to inspect and/or audit Franchisee's accounts, books, records, and tax returns at all reasonable times to ensure that Franchisee is complying with the terms of this Franchise. If such inspection discloses that Gross Sales actually exceeded the amount reported by Franchisee as Gross Sales by an amount equal to two percent (2%) or more of Gross Sales originally reported to McDonald's, Franchisee shall bear the cost of such inspection and audit.

    11. ***Restrictions***. Franchisee agrees and covenants as follows:

    (a) During the term of this Franchise, Franchisee shall not, without the prior written consent of McDonald's, directly or indirectly, engage in, acquire any financial or beneficial interest (including interests in corporations, partnerships, trusts, unincorporated associations, or joint ventures) in, or become a landlord for any restaurant business, which is similar to the Restaurant.

    (b) Franchisee shall not, for a period of eighteen (18) months after termination of this Franchise for any reason or the sale of the Restaurant, directly or indirectly, engage in or acquire any financial or beneficial interest (including any interest in corporations, partnerships, trusts, unincorporated associations, or joint ventures) in, or become a landlord of any restaurant business which is similar to the Restaurant within a ten-mile radius of the Restaurant.

    (c) Franchisee shall not appropriate, use, or duplicate the McDonald's System, or any portion thereof, for use at any other self-service, carry-out, or other similar restaurant business.

    (d) Franchisee shall not disclose or reveal any portion of the McDonald's System to a non-franchisee other than to Franchisee's Restaurant employees as an incident of their training.

    (e) Franchisee shall acquire no right to use, or to license the use of, any name, mark, or other intellectual property right granted or to be granted herein, except in connection with the operation of the Restaurant.

    The restrictions contained in paragraphs 11(a) and 11(b) herein shall not apply to ownership of less than two percent (2%) of the shares of a company whose shares are listed and traded on a national or regional securities exchange.

    12. ***Compliance With Entire System***. Franchisee acknowledges that every component of the McDonald's System is important to McDonald's and to the operation of the Restaurant as a McDonald's

restaurant, including a designated menu of food and beverage products; uniformity of food specifications, preparation methods, quality, and appearance; and uniformity of facilities and service.

McDonald's shall have the right to inspect the Restaurant at all reasonable times to ensure that Franchisee's operation thereof is in compliance with the standards and policies of the McDonald's System.

Franchisee shall comply with the entire McDonald's System, including, but not limited to, the following:

(a) Operate the Restaurant in a clean, wholesome manner in compliance with prescribed standards of Quality, Service, and Cleanliness; comply with all business policies, practices, and procedures imposed by McDonald's; serve at the Restaurant only those food and beverage products now or hereafter designated by McDonald's; and maintain the building, fixtures, equipment, signage, seating and decor, and parking area in a good, clean, wholesome condition and repair, and well lighted and in compliance with designated standards as may be prescribed from time to time by McDonald's;

(b) Purchase kitchen fixtures, lighting, seating, signs, and other equipment in accordance with the equipment specifications and layout initially designated by McDonald's and, promptly after notice from McDonald's that the Restaurant premises are ready for occupancy, cause the installation thereof;

(c) Keep the Restaurant constructed and equipped in accordance with the building blueprints and equipment layout plans that are standard in the McDonald's System or as such blueprints and plans may be reasonably changed from time to time by McDonald's;

(d) Franchisee shall not, without the prior written consent of McDonald's: (i) make any building design conversion or (ii) make any alterations, conversions, or additions to the building, equipment, or parking area;

(e) Make repairs or replacements required: (i) because of damage or wear and tear or (ii) in order to maintain the Restaurant building and parking area in good condition and in conformity to blueprints and plans;

(f) Where parking is provided, maintain the parking area for the exclusive use of Restaurant customers;

(g) Operate the Restaurant seven (7) days per week throughout the year and at least during the hours from 7:00 a.m. to 11:00 p.m., or such other hours as may from time to time be prescribed by McDonald's (except when the Restaurant is untenantable as a result of fire or other casualty), maintain sufficient supplies of food and paper products, and employ adequate personnel so as to operate the Restaurant at its maximum capacity and efficiency;

(h) Cause all employees of Franchisee, while working in the Restaurant, to: (i) wear uniforms of such color, design, and other specifications as McDonald's may designate from time to time; (ii) present a neat and clean appearance; and (iii) render competent and courteous service to Restaurant customers;

(i) In the dispensing and sale of food products: (i) use only containers, cartons, bags, napkins, other paper goods, and packaging bearing the approved trademarks and which meet the McDonald's

7

System specifications and quality standards which McDonald's may designate from time to time; (ii) use only those flavorings, garnishments, and food and beverage ingredients which meet the McDonald's System specifications and quality standards which McDonald's may designate from time to time; and (iii) employ only those methods of food handling and preparation which McDonald's may designate from time to time;

(j) To make prompt payment in accordance with the terms of invoices rendered to Franchisee on Franchisee's purchase of fixtures, signs, equipment, and food and paper supplies; and

(k) At Franchisee's own expense, comply with all federal, state, and local laws, ordinances, and regulations affecting the operation of the Restaurant.

13. **Best Efforts**. Franchisee shall diligently and fully exploit the rights granted in this Franchise by personally devoting full time and best efforts and, in case more than one individual has executed this Franchise as the Franchisee, then _____ shall personally devote full time and best efforts to the operation of the Restaurant. Franchisee shall keep free from conflicting enterprises or any other activities which would be detrimental to or interfere with the business of the Restaurant.

14. ***Interference With Employment Relations of Others***. During the term of this Franchise, Franchisee shall not employ or seek to employ any person who is at the time employed by McDonald's, any of its subsidiaries, or by any person who is at the time operating a McDonald's restaurant or otherwise induce, directly or indirectly, such person to leave such employment. This paragraph 14 shall not be violated if such person has left the employ of any of the foregoing parties for a period in excess of six (6) months.

15. *Assignment*. Without the prior written consent of McDonald's, Franchisee's interest in this Franchise shall not be assigned or otherwise transferred in whole or in part (whether voluntarily or by operation of law) directly, indirectly, or contingently, and then only in accordance with the terms of this paragraph 15.

(a) Death or Permanent Incapacity of Franchisee. Upon the death or permanent incapacity of Franchisee, the interest of Franchisee in this Franchise may be assigned either pursuant to the terms of paragraph 15(d) herein or to one or more of the following persons: Franchisee's spouse, heirs, or nearest relatives by blood or marriage, subject to the following conditions: (i) if, in the sole discretion of McDonald's, such person shall be capable of conducting the Restaurant business in accordance with the terms and conditions of this Franchise and (ii) if such person shall also execute an agreement by which the person personally assumes full and unconditional liability for and agrees to perform all the terms and conditions of this Franchise to the same extent as the original Franchisee. If, in McDonald's sole discretion, such person cannot devote full time and best efforts to the operation of the Restaurant or lacks the capacity to operate the Restaurant in accordance with this Franchise, McDonald's shall have an option to operate and/or manage the Restaurant for the account of Franchisee or of Franchisee's estate until the deceased or incapacitated Franchisee's interest is transferred to another party acceptable to McDonald's in accordance with the terms and conditions of this Franchise. However, in no event shall such McDonald's operation and management of the Restaurant continue for a period in excess of twelve (12) full calendar months without the consent of Franchisee or Franchisee's estate. In the event that McDonald's so operates and/or manages the Restaurant, McDonald's shall make a complete account to and return

8

the net income from such operation to the Franchisee or to Franchisee's estate, less a reasonable management fee and expenses. If the disposition of the Restaurant to a party acceptable to McDonald's has not taken place within twelve (12) months from the date that McDonald's has commenced the operation or management of the Restaurant on behalf of the deceased or incapacitated Franchisee, then, in that event, McDonald's shall have the option to purchase the Restaurant at fair market value for cash or its common stock at its option.

(b) Assignment to Franchisee's Corporation. Upon Franchisee's compliance with such requirements as may from time to time be prescribed by McDonald's, including a Stockholders Agreement in the form prescribed by McDonald's, McDonald's shall consent to an assignment to a corporation whose shares are wholly owned and controlled by Franchisee. The corporate name of the corporation shall not include any of the names or trademarks granted by this Franchise. Any subsequent assignment or transfer, either voluntarily or by operation of law, of all or any part of said shares shall be made in compliance with the terms and conditions set forth in paragraphs 15(a) and 15(d) herein.

(c) First Option to Purchase. Franchisee or Franchisee's representative shall, at least twenty (20) days prior to the proposed effective date, give McDonald's written notice of intent to sell or otherwise transfer this Franchise pursuant to paragraph 15(d). The notice shall set forth the name and address of the proposed purchaser and all the terms and conditions of any offer. McDonald's shall have the first option to purchase the Restaurant by giving written notice to Franchisee of its intention to purchase on the same terms as the offer within ten (10) days following McDonald's receipt of such notice. However, if McDonald's fails to exercise its option and the Restaurant is not subsequently sold to the proposed purchaser for any reason, McDonald's shall continue to have, upon the same conditions, a first option to purchase the Restaurant upon the terms and conditions of any subsequent offer.

(d) Other Assignment. In addition to any assignments or contingent assignments contemplated by the terms of paragraphs 15(a) and 15(b), Franchisee shall not sell, transfer, or assign this Franchise to any person or persons without McDonald's prior written consent. Such consent shall not be arbitrarily withheld.

In determining whether to grant or to withhold such consent, McDonald's shall consider of each prospective transferee, by way of illustration, the following: (i) work experience and aptitude, (ii) financial background, (iii) character, (iv) ability to personally devote full time and best efforts to managing the Restaurant, (v) residence in the locality of the Restaurant, (vi) equity interest in the Restaurant, (vii) conflicting interests, and (viii) such other criteria and conditions as McDonald's shall then apply in the case of an application for a new franchise to operate a McDonald's restaurant. McDonald's consent shall also be conditioned each upon such transferee's execution of an agreement by which transferee personally assumes full and unconditional liability for and agrees to perform from the date of such transfer all obligations, covenants, and agreements contained in this Franchise to the same extent as if transferee had been an original party to this Franchise. Franchisee and each transferor shall continue to remain personally liable for all affirmative obligations, covenants, and agreements contained herein for the full term of this Franchise or for such shorter period as McDonald's may,

9

in its sole discretion, determine. Upon each assignment or other transfer of this Franchise to any person or persons under the terms and conditions of this paragraph 15(d), the percentage service fee charge owing to McDonald's after the date of such assignment or transfer shall be automatically adjusted to the then prevailing percentage service fee charge required under new Franchises issued by McDonald's for similar McDonald's restaurants at the time of such assignment or transfer.

16. *Franchisee Not an Agent of McDonald's.* Franchisee shall have no authority, express or implied, to act as agent of McDonald's or any of its affiliates for any purpose. Franchisee is, and shall remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the Restaurant and its business, including any personal property, equipment, fixtures, or real property connected therewith, and for all claims or demands based on damage or destruction of property or based on injury, illness, or death of any person or persons, directly or indirectly, resulting from the operation of the Restaurant. Further, Franchisee and McDonald's are not and do not intend to be partners, associates, or joint employers in any way and McDonald's shall not be construed to be jointly liable for any acts or omissions of Franchisee under any circumstances.

17. *Insurance.* Franchisee shall, upon taking possession of the Restaurant, acquire and maintain in effect such insurance with such coverages as may be required by the terms of any lease of the Restaurant premises to McDonald's, and in any event, Franchisee shall acquire and maintain in effect not less than the following coverages in the following minimum amounts:

    (a) Worker's Compensation insurance prescribed by law in the state in which the Restaurant is located and Employer's Liability Insurance with $100,000/$500,000/$100,000 minimum limit. If the state in which the Restaurant is located allows the option of not carrying Worker's Compensation Insurance, and Franchisee chooses to exercise that option, Franchisee shall nonetheless carry and maintain other insurance with coverage and limits as approved by McDonald's.

    (b) Commercial general liability insurance in a form approved by McDonald's with a limit of $5,000,000 per occurrence/$5,000,000 aggregate.

    (c) All such insurance as may be required under the Lease.

    All insurance policies required to be carried hereunder shall name McDonald's and any party designated by McDonald's as additional insureds, as their interests may appear in this Franchise. All policies shall be effective on or prior to the date Franchisee is given possession of the Restaurant premises for the purpose of installing equipment or opening the Restaurant, whichever occurs first, and evidence of payment of premiums and duplicate copies of policies of the insurance required herein shall be delivered to McDonald's at least thirty (30) days prior to the date that Franchisee opens for business and/or thirty (30) days prior to the expiration date of an existing policy of insurance. All policies of insurance shall include a provision prohibiting cancellations or material changes to the policy thereof until thirty (30) days prior written notice has been given to McDonald's.

In the event Franchisee shall fail to obtain the insurance required herein, McDonald's may, but is not obligated to, purchase said insurance, adding the premiums paid to Franchisee's monthly rent. (Franchisee may authorize McDonald's to purchase and to administer the required minimum insurance on Franchisee's behalf. However, McDonald's, by placement of the required minimum insurance, assumes no responsibility for premium expense nor guarantees payment for any losses sustained by Franchisee.) McDonald's may relieve itself of all obligations with respect to the purchase and administration of such required insurance coverage by giving ten (10) days written notice to Franchisee.

All insurance shall be placed with a reputable insurance company licensed to do business in the state in which the Restaurant is located and having a Financial Size Category equal to or greater than IX and Policyholders Rating of "A+" or "A", as assigned by Alfred M. Best and Company, Inc., unless otherwise approved by McDonald's.

18. *Material Breach.* The parties agree that the happening of any of the following events shall constitute a material breach of this Franchise and violate the essence of Franchisee's obligations and, without prejudice to any of its other rights or remedies at law or in equity, McDonald's, at its election, may terminate this Franchise upon the happening of any of the following events:

(a) Franchisee shall fail to maintain and operate the Restaurant in a good, clean, wholesome manner and in compliance with the standards prescribed by the McDonald's System;

(b) Franchisee shall be adjudicated a bankrupt, become insolvent, or a receiver, whether permanent or temporary, for all or substantially all of Franchisee's property, shall be appointed by any court, or Franchisee shall make a general assignment for the benefit of creditors, or a voluntary or involuntary petition under any bankruptcy law shall be filed with respect to Franchisee and shall not be dismissed within thirty (30) days thereafter;

(c) Any payment owing to McDonald's is not paid within thirty (30) days after the date such payment is due;

(d) Any judgment or judgments aggregating in excess of $5,000.00 against Franchisee or any lien in excess of $5,000.00 against Franchisee's property shall remain unsatisfied or unbonded of record in excess of thirty (30) days;

(e) Franchisee shall cause, suffer, or permit (voluntarily or involuntarily) Franchisee's right of possession as lessee or sublessee of the premises on which the Restaurant is located to be terminated prematurely for any cause whatever;

(f) Franchisee shall acquire any interest in a business in violation of paragraph 11(a);

(g) Franchisee shall duplicate the McDonald's System in violation of paragraph 11(c);

(h) Franchisee shall make or cause a disclosure of any portion of the McDonald's System in violation of paragraph 11(d) or shall make or cause a disclosure of part of the McDonald's System business manuals;

(i) Franchisee shall violate paragraph 11(e) by use of any name, trademark, service mark, or other intellectual property right exceeding the restrictions of said paragraph 11;

(j) Franchisee shall knowingly sell food or beverage products other than those designated by McDonald's or which fail to conform to McDonald's System specifications for those products, or which are not prepared in accordance with the methods prescribed by McDonald's, or fail to sell products designated by McDonald's;

(k) Any assignment or other transfer of any interest of the Franchisee in this Franchise shall occur in violation of paragraph 15(d) herein;

(l) Franchisee shall deny McDonald's the right to inspect the Restaurant at reasonable times;

(m) Franchisee shall fail to make or make repeated delays in the prompt payment of undisputed invoices from suppliers or in the remittance of payments as required by this Franchise;

(n) Franchisee makes any misrepresentations to McDonald's relating to the acquisition and/or ownership of this Franchise;

(o) Franchisee engages in public conduct which reflects materially and unfavorably upon the operation of the Restaurant, the reputation of the McDonald's System, or the goodwill associated with the McDonald's trademarks; provided that engaging in legitimate political activity (including testifying, lobbying, or otherwise attempting to influence legislation) shall not be grounds for termination;

(p) Franchisee is convicted of, pleads guilty or no contest to a felony, or any other crime that is reasonably likely to adversely affect the McDonald's System, the Restaurant, or the goodwill associated with the McDonald's trademarks; or

(q) Franchisee intentionally understates Gross Sales reported to McDonald's.

19. **Other Breaches.** If Franchisee fails in the performance of any of the terms and conditions of this Franchise (other than performance of the terms and conditions listed in paragraph 18), Franchisee shall be guilty of a breach of this Franchise which shall not (except in the case of repeated breaches of the same or of different terms and conditions of this Franchise) constitute grounds for termination of this Franchise. McDonald's shall have the right to seek judicial enforcement of its rights and remedies, including, but not limited to, injunctive relief, damages, or specific performance. Notwithstanding any of the provisions of this paragraph 19, any uncured breach of the terms of this Franchise (whether of paragraph 18 or 19) shall be sufficient reason for McDonald's to withhold approval of its consent to any assignment or transfer of Franchisee's interest in this Franchise provided for herein.

20. **Effect of Termination.**

(a) In the event of any material breach of this Franchise, McDonald's shall have an immediate right to enter and take possession of the Restaurant in order to maintain continuous operation of the Restaurant, to provide for orderly change of management and disposition of personal property, and to otherwise protect McDonald's interest.

(b) Upon termination of this Franchise due to any breach or breaches, Franchisee shall not, without the prior written consent of McDonald's, remove any furniture, fixtures, signs, equipment, other property, or leasehold improvements from the premises either prior to or for a period of thirty (30) days following such termination. McDonald's shall have the option for thirty (30) days following any such termination to purchase Franchisee's furniture, fixtures, signs, equipment, other property, and leasehold improvements or any portion thereof for a sum equal to the fair market value of such property. In the event of such a termination, there shall be no payment by McDonald's for intangible assets of Franchisee.

(c) Upon termination of this Franchise due to the expiration of its term or as a result of any eminent domain proceedings affecting the premises upon which the Restaurant is situated, Franchisee shall not remove any furniture, fixtures, signs, equipment, other property, or leasehold improvements within sixty (60) days prior to the date specified for termination or the date specified for takeover by any public authority. McDonald's shall, upon written notice of its intention to purchase said property at least thirty (30) days prior to such date of termination, have the option to purchase Franchisee's furniture, fixtures, signs, equipment, other property, and leasehold improvements or any portion thereof for a sum equal to the fair market value of such property. In the event of such a termination, there shall be no payment by McDonald's for intangible assets of Franchisee.

(d) Upon termination or expiration of this Franchise, Franchisee shall: (i) forthwith return to McDonald's the business manuals furnished to Franchisee, together with all other material containing trade secrets, operating instructions, or business practices; (ii) discontinue the use of the McDonald's System and its associated trade names, service marks, and trademarks or the use of any and all signs and printed goods bearing such names and marks, or any reference to them; (iii) not disclose, reveal, or publish all or any portion of the McDonald's System; and (iv) not thereafter use any trade name, service mark, or trademark similar to or likely to be confused with any trade name, service mark, or trademark used at any time in the McDonald's System.

21. *Effect of Waivers.* No waiver by McDonald's or any breach or a series of breaches of this Franchise shall constitute a waiver of any subsequent breach or waiver of the terms of this Franchise.

22. *Notices.* Any notice hereunder shall be in writing and shall be delivered by personal service or by United States certified or registered mail, with postage prepaid, addressed to Franchisee at the Restaurant or to McDonald's at **ONE McDONALD'S PLAZA, OAK BROOK, ILLINOIS 60523**. Either party, by a similar written notice, may change the address to which notices shall be sent.

23. *Cost of Enforcement.* If McDonald's institutes any action at law or in equity against Franchisee to secure or protect McDonald's rights under or to enforce the terms of this Franchise, in addition to any judgment entered in its favor, McDonald's shall be entitled to recover such reasonable attorneys' fees as may be allowed by the court together with court costs and expenses of litigation.

24. *Indemnification.* If McDonald's shall be subject to any claim, demand, or penalty or become a party to any suit or other judicial or administrative proceeding by reason of any claimed act or omission by Franchisee or Franchisee's employees or agents, or by reason of any act occurring on the Restaurant premises, or by reason of an omission with respect to the business or operation of the Restaurant, Franchisee shall indemnify

13

and hold McDonald's harmless against all judgments, settlements, penalties, and expenses, including attorneys' fees, court costs, and other expenses of litigation or administrative proceeding, incurred by or imposed on McDonald's in connection with the investigation or defense relating to such claim, litigation, or administrative proceeding and, at the election of McDonald's, Franchisee shall also defend McDonald's.

25.  *Construction and Severability.*  All references in this Franchise to the singular shall include the plural where applicable.  If any part of this Franchise for any reason shall be declared invalid, such decision shall not affect the validity of any remaining portion, which shall remain in full force and effect.  In the event that any material provision of this Franchise shall be stricken or declared invalid, McDonald's reserves the right to terminate this Franchise.

26.  *Scope and Modification of Franchise.*  This Franchise (including Exhibit A and any riders hereto) constitutes the entire agreement between the parties and supersedes all prior and contemporaneous, oral or written, agreements or understandings of the parties.  Nothing in this Franchise or in any related agreement, however, is intended to disclaim the representations made in the Franchise Disclosure Document furnished to Franchisee.  No interpretation, change, termination, or waiver of any of the provisions hereof shall be binding upon McDonald's unless in writing signed by an officer or franchising director of McDonald's, and which is specifically identified as an amendment hereto.  No modification, waiver, termination, rescission, discharge, or cancellation of this Franchise shall affect the right of any party hereto to enforce any claim or right hereunder, whether or not liquidated, which occurred prior to the date of such modification, waiver, termination, rescission, discharge, or cancellation.

27.  *Governing Laws.*  The terms and provisions of this Franchise shall be interpreted in accordance with and governed by the laws of the state of Illinois.

28.  *Acknowledgment.*  Franchisee acknowledges that:

(a)  The term of this Franchise is set forth in paragraph 2(b) hereof with no promise or representation as to the renewal of this Franchise or the grant of a new franchise;

(b)  Franchisee hereby represents that Franchisee has received a copy of this Franchise, has read and understands all obligations being undertaken, and has had an opportunity to consult with Franchisee's attorney with respect thereto at least seven (7) calendar days prior to execution;

(c)  No representation has been made by McDonald's as to the future profitability of the Restaurant;

(d)  Prior to the execution of this Franchise, Franchisee has worked at a McDonald's restaurant and has had ample opportunity to contact existing franchisees of McDonald's and to investigate all representations made by McDonald's relating to the McDonald's System;

(e)  This Franchise establishes the Restaurant at the location specified on page 1 hereof only and that no "exclusive," "protected," or other territorial rights in the contiguous market area of such Restaurant is hereby granted or inferred;

   (f) This Franchise supersedes any and all other agreements and representations respecting the Restaurant and contains all the terms, conditions, and obligations of the parties with respect to the grant of this Franchise; however, nothing in this Franchise or in any related agreement is intended to disclaim the representations made in the Franchise Disclosure Document furnished to Franchisee;

   (g) McDonald's or its affiliates are the sole owner(s) of the trademarks, trade names, service marks, and goodwill associated therewith, respectively, and Franchisee acquires no right, title, or interest in those names and marks other than the right to use them only in the manner and to the extent prescribed and approved by McDonald's;

   (h) No future franchise or offers of franchises for additional McDonald's restaurants, other than this Franchise, have been promised to Franchisee and any other franchise offer shall only be in writing, executed by an officer or franchising director of McDonald's, and identified as a Franchise Agreement or Rewrite (New Term) Offer Letter;

   (i) Neither McDonald's nor anyone acting on its behalf has made any representations, inducements, promises, or agreements, orally or otherwise, respecting the subject matter of this Franchise, which is not embodied herein or set forth in the Franchise Disclosure Document; and

   (j) This Franchise is offered to Franchisee personally and to no others, and may not be accepted by any other person, partnership, or corporation, or transferred by assignment, will, or operation of law.

  **IN WITNESS WHEREOF**, the parties hereto set their hands and seals, in duplicate, the day and year in this instrument first above written.

**McDONALD'S USA, LLC**         **Franchisee**

By: _____  _____
                                        Date

Prepared By: _____  _____
                                         Date

**The following changes are made to the Franchise Agreement in the following states:**

**Minnesota**     Paragraph 27 continues with, "Nothing in this Franchise or the Franchise Disclosure Document shall in any way abrogate or reduce any rights of the Franchisee as provided for in Minnesota Statutes, Chapter 80C, or Franchisee's rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction."

A new Paragraph 28(h) is inserted (and remaining sub-paragraphs are renamed (i) through (k)) as follows: "McDonald's considers the trademarks, trade names, logo types, service marks, and commercial symbols to be valuable property rights and continually protects against infringement of these assets. It protects franchisees against claims of infringement or unfair competition to which the franchisees might become subjected because of their authorized use of the trademarks, service marks, logo types, or other commercial symbols in the United States."

Paragraph 28(l) is added as follows: "With respect to franchises governed by Minnesota law, McDonald's will comply with Minnesota Statutes Section 80C.14, Subdivisions 3, 4, and 5 which require, except in certain specified cases, that the Franchisee be given ninety (90) days notice of termination (with sixty (60) days to cure) and 180 days notice for non-renewal of this Franchise; and that consent to the transfer of this Franchise will not be unreasonably withheld."

**North Dakota**     Paragraph 11(b) continues with, "Covenants not to compete such as those mentioned above are generally considered unenforceable in the State of North Dakota. However, Franchisee and McDonald's agree to enforce these provisions to the extent allowed under law."

Paragraph 27 continues with, ", except that North Dakota law will govern with respect to claims arising under the North Dakota Franchise Investment Law."

**Washington**     Paragraph 28(k) is added as follows: "In recognition of the requirements of the Washington Franchise Investment Protection Act (the "Act") and the rules and regulations promulgated thereunder, this Franchise shall be modified as follows:

The State of Washington has a statute, RCW 19.100.180, which might supersede this Franchise in Franchisee's relationship with McDonald's, including the areas of termination and renewal of this Franchise. There also might be court decisions which supersede this Franchise in Franchisee's relationship with McDonald's, including the areas of termination and renewal of this Franchise.

In the event of a conflict of laws, to the extent required by the Act, the provisions of the Act, Chapter 19.100 RCW, shall prevail.

To the extent required by the Act, a release or waiver of rights executed by a franchisee shall not include rights under the Act except when executed pursuant to a negotiated settlement after the agreement is in effect and where the parties are represented by independent counsel. Provisions such as those which unreasonably restrict or limit the statute of limitations period for claims under the Act, rights or remedies under the Act, such as a right to a jury trial, might not be enforceable; however, McDonald's and Franchisee agree to enforce them to the maximum extent the law allows."